# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| TRACY W. DAILEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:11-CV-1565 CAS |
| | ) | |
| SOUTHSIDE MACHINE WORK, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER CONCERNING REMOVAL

This matter is before the Court on review of the file following removal. "In every federal case the court must be satisfied that it has jurisdiction before it turns to the merits of other legal arguments." Carlson v. Arrowhead Concrete Works, Inc., 445 F.3d 1046, 1050 (8th Cir. 2006). The Eighth Circuit has admonished district courts to "be attentive to a satisfaction of jurisdictional requirements in all cases." Sanders v. Clemco Indus., 823 F.2d 214, 216 (8th Cir. 1987).

Plaintiff filed suit in the Circuit Court of the City of St. Louis, State of Missouri. The petition asserts that plaintiff Dailey has been legally deaf since birth, and therefore suffers a disability under Missouri Revised Statutes § 213.010(4) (2000). Dailey worked as a machinist for defendant Southside Machine Work, Inc. ("Southside"), and alleges that Southside laid him off and ultimately terminated his employment because of his deafness. The petition asserts state law claims for discrimination based on actual disability in violation of the Missouri Human Rights Act ("MHRA") (Count I), discrimination based on perceived disability in violation of the MHRA (Count II), and wrongful discharge in retaliation for filing a workers' compensation claim (Count III).

Southside removed the action to this Court pursuant to 28 U.S.C. §§ 1331 and 1441, asserting that plaintiff's state law claims in the petition are preempted under Section 301 of the

Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Southside asserts that the petition alleges plaintiff was a member of the International Association of Machinists, District 9, and therefore the terms and conditions of his employment were subject to a collective bargaining agreement. Southside also asserts that the petition alleges its actions constitute a breach of the collective bargaining agreement. Southside therefore argues that resolution of plaintiff's allegations will require construction and interpretation of the applicable collective bargaining agreement, citing Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211 (1985) ("Questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law.").

The defendant, as the party invoking jurisdiction, bears the burden of proving that all prerequisites to jurisdiction are satisfied. Green v. Ameritrade, Inc., 279 F.3d 590, 596 (8th Cir. 2002). Removal statutes are strictly construed, In re Business Men's Assurance Co. of America, 992 F.2d 181, 183 (8th Cir. 1993), and any doubts about the propriety of removal are to be resolved in favor of remand. Central Iowa Power Coop. v. Midwest Indep. Transmission Sys. Operator, Inc., 561 F.3d 904, 912 (8th Cir. 2009). While a defendant has a statutory right to remove in certain situations, the plaintiff is still the master of his own claim. See Caterpillar Inc. v. Williams, 482 U.S. 386, 391 & n.7 (1987); see also Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994) ("Defendant's right to remove and plaintiff's right to choose his forum are not on equal footing"; consequently, "uncertainties are resolved in favor of remand.")

In most instances, the presence or absence of a federal question is governed by the well-pleaded complaint rule "which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar, 482 U.S. at 392.

2

"Congress has long since decided that federal defenses do not provide a basis for removal." Id. at 399. "Thus, a case may not be removed to federal court on the basis of a defense, . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." Rivet v. Regions Bank of Louisiana, 522 U.S. 470, 475 (1998) (quotation marks and quoted case omitted).

It is well established that Section 301 of the LMRA completely preempts state law claims, including tort claims, that involve the interpretation and application of a collective bargaining agreement. United Steelworkers of America v. Rawson, 495 U.S. 362, 368-69 (1990). As a result, an action that in substance charges a violation of a collective bargaining agreement may be removed to federal court, even though the petition itself does not include a federal cause of action. Allis-Chalmers Corp., 471 U.S. at 214. The Supreme Court has explained that in order to give the "policies that animate § 301" their proper range, "the pre-emptive effect of § 301 must extend beyond suits alleging contract violations. These policies require that the relationships created by a collective-bargaining agreement be defined by application of an evolving federal common law grounded in national labor policy." Id. at 210-11 (internal quotation marks, brackets and quoted case omitted).

It is certain, however, that not every state tort suit brought by an employee covered by a collective bargaining agreement is preempted by the LMRA. In Lingle v. Norge Division of Magic Chef, Inc., the Supreme Court explained that a state-law claim is preempted by Section 301 only if resolution of the claim requires interpretation of a collective bargaining agreement. 486 U.S. 399, 413 (1988). In Lingle, the Court held that the plaintiff's state-law claim for retaliatory discharge for

3

filing a workers' compensation claim was not preempted by Section 301. Id. Federal preemption is driven by the need to ensure

> that the meaning given a contract phrase or term be subject to uniform federal interpretation. Thus, questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort.

Allis-Chalmers, 471 U.S. at 211.

State law tort claims that do not implicate these federal interests are not preempted, and the determination must be made on a case-by-case basis. Kmetz v. Permacel St. Louis, Inc., 2008 WL 4643868, at *2 (E.D. Mo. Oct. 20, 2008). "[N]ot every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law." Allis-Chalmers, 471 U.S. at 211. The inquiry is whether the state tort claim "confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." Id. at 213. "[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." Id. at 220 (internal citation omitted).

In Lingle, the Supreme Court approved, in dicta, the Seventh Circuit's recognition "that § 301 does not pre-empt state anti-discrimination laws, even though a suit under these laws, like a suit alleging retaliatory discharge, requires a state court to determine whether just cause existed to justify the discharge." Lingle, 486 U.S. at 412 (quoted case omitted). The Supreme Court explained

that in most cases, the existence of a violation of state-law antidiscrimination law will not be dependent on the terms of a collective bargaining agreement:

> The operation of the antidiscrimination laws . . . illustrate[s] the relevant point for § 301 pre-emption analysis that the mere fact that a broad contractual protection against discriminatory-or retaliatory discharge may provide a remedy for conduct that coincidentally violates state-law does not make the existence or the contours of the state law violation dependent upon the terms of the private contract. For even if an arbitrator should conclude that the contract does not prohibit a particular discriminatory or retaliatory discharge, that conclusion might or might not be consistent with a proper interpretation of state law. In the typical case a state tribunal could resolve either a discriminatory or retaliatory discharge claim without interpreting the "just cause" language of a collective-bargaining agreement.

Lingle, 486 U.S. at 412-13.

An employment discrimination law treatise states that the majority of courts to address the question whether state disability discrimination laws are preempted by the LMRA have ruled that such claims generally do not sufficiently implicate the collective bargaining agreement to require preemption. See 9 Lex K. Larson, Employment Discrimination, § 167.06 (2d ed. 2007), primarily discussing Smolarek v. Chrysler Corp., 879 F.2d 1326 (6th Cir. 1989); see, e.g., Brown v. Holiday Stationstores, Inc., 723 F. Supp. 396, 406-07 (D. Minn. 1989) (remanding diabetic employee's state-law handicap discrimination failure to accommodate claim).

In Smolarek, the employee claimed the employer violated its duties under the Michigan Handicappers' Civil Rights Act ("HCRA") by refusing to return him to his former position or to another position consistent with his medical restrictions, and instead maintained him on disability layoff. The employee's complaint did not allege a violation of the collective bargaining agreement The Sixth Circuit held that the claim was not preempted by Section 301, even though the collective bargaining agreement contained a provision regarding reinstatement and the employer might assert

5

as a defense that its treatment of plaintiff was required by the terms of the agreement. Smolarek, 879 F.2d at 1334.

The Sixth Circuit stated that even if the plaintiff might have been able to charge his employer with a violation of the collective bargaining agreement under the circumstances of his case, he did not do so, and "this does not mean that § 301, even if applicable but not utilized by plaintiff, preempts the claim." Id. at 1333. The court observed that case was not one "in which the duty claimed to have been breached (i.e., the duty not to discriminate) arises solely from the collective bargaining agreement," nor was it a case in which evaluation of the employer's prima facie liability would necessarily require a determination whether the collective bargaining agreement had been breached. Id. The court also stated that while Chrysler, in its defense, could assert that its treatment of the plaintiff was allowed or required by the terms of the collective bargaining agreement and therefore was not based on his handicap, the assertion of a defense requiring application of federal law did not support removal to federal court. Id.

In contrast, a few decisions have held that state law disability discrimination claims are preempted when the terms of the collective bargaining agreement have been intertwined with the state law claims. 9 Larson, Employment Discrimination, § 167.06. For example, in Davis v. Johnson Controls, Inc., 21 F.3d 866 (8th Cir. 1994), the Eighth Circuit affirmed the district court's holding that a handicap discrimination claim under the MHRA was preempted by Section 301 where the plaintiff had been unable to work following a back injury, and the employer did not permit him to return to work after his condition improved.

The district court had decided that § 301 preemption based on affidavits and matters outside the pleadings, so the Eighth Circuit reviewed the district court's order as a summary judgment

6

ruling. The Eighth Circuit began its analysis by stating that under Lingle, state-law claims are preempted under Section 301 only if resolution of the claim requires the interpretation of a collective bargaining agreement. Davis, 21 F.3d at 867. The employer argued that for the plaintiff to establish he was disabled within the meaning of the MHRA, he must show the employer could have reasonably accommodated his request to return to work, which would require reviewing the employer's obligations under the collective bargaining agreement and interpreting the agreement's seniority provisions. Id. at 868. The Eighth Circuit agreed with the district court that under the circumstances of the case, relocating the plaintiff to a position commensurate with his physical limitations would require an examination of the plaintiff's and other employees' seniority rights under the collective bargaining agreement, and thus would require interpretation of the agreement. As a result, the state law claims in Davis were preempted under Allis-Chalmers and Lingle. Id.

With these principles in mind, the Court examines the removed case before it. Plaintiff alleges in the petition that he has been legally deaf since birth and has a disability within the meaning of the MHRA. Plaintiff is a Union machinist. Plaintiff alleges that supervisors and coworkers at Southside were hostile to him because of his hearing disability and that, by reading lips, he caught his supervisor stating that plaintiff should not be working at Southside, and other co-workers and supervisors "speaking ill of him because he was disabled." Petition, ¶ 20. Plaintiff alleges that in 2008, Southside hired a less experienced machinist to operate the machine plaintiff had been successfully operating, and reassigned plaintiff to a smaller machine for simpler jobs.

The petition alleges that on July 20, 2009, plaintiff's supervisor called plaintiff into his office and told plaintiff he was being laid off. Plaintiff requested Union representation at the meeting but the supervisor refused, and the supervisor also refused to write down what he was saying, so plaintiff

7

was required to read his lips. The petition alleges that under the Union contract, less senior employees were to be laid off first, but plaintiff contends at least three employees who had less seniority than him were allowed to keep their jobs while he was laid off. Petition, ¶¶ 35-36. In April 2010, plaintiff received a letter from Southside regarding his retirement, which stated he had been terminated on July 29, 2009. Plaintiff then filed a charge of discrimination with the Equal Employment Opportunity Commission and the Missouri Commission on Human Rights, and received right to sue letters from those agencies.

As stated previously, the petition asserts state law claims for discrimination based on actual disability in violation of the MHRA (Count I), discrimination based on perceived disability in violation of the MHRA (Count II), and wrongful discharge in retaliation for filing a workers' compensation claim (Count III). The petition does not contain a claim for breach of the union contract.

The MHRA prohibits an employer from, among other things, discharging or otherwise discriminating against any individual with respect to his compensation, terms, conditions or privileges of employment, because of the individual's disability. Mo. Rev. Stat. § 213.055.1. The MHRA defines disability as a "physical or mental impairment which substantially limits one or more of a person's major life activities, being regarded as having such an impairment, a condition perceived as such, or a record of having such an impairment, which with or without reasonable accommodation does not interfere with performing the job." Mo. Rev. Stat. § 213.010(4).

Southside contends in its Notice of Removal that the Court must interpret the collective bargaining agreement in order to resolve plaintiff's claims, but does not provide a copy of the agreement, quote relevant portions of the agreement, or explain how plaintiff's claims are so

8

intertwined with the agreement that the Court must interpret its terms in order to resolve plaintiff's state law claims. Nor does Southside discuss the nature of the rights conferred on plaintiff by the MHRA, i.e., whether the statute "confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." Allis-Chalmers, 471 U.S. at 213.

For these reasons, the Court cannot determine whether it has subject matter jurisdiction over this action. The Court will direct defendant to file a memorandum of law to establish the existence of subject matter jurisdiction. Plaintiff will have the opportunity to respond. Defendant's failure to timely and fully comply with this Order will result in the remand of this case for lack of subject matter jurisdiction.

Accordingly,

**IT IS HEREBY ORDERED** that by **November 10, 2011**, defendant shall file a memorandum of law including citation to relevant authority, supported by any relevant exhibits, to establish that plaintiff's state law claims under the MHRA are so intertwined with interpretation of the collective bargaining agreement that they are preempted by Section 301 of the LMRA.

**IT IS FURTHER ORDERED** that plaintiff shall have ten (10) days after defendant's memorandum of law is filed in which to file any response.

**IT IS FURTHER ORDERED** that all other proceedings in this case are **STAYED** pending further order of this Court.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  21st  day of October, 2011.