UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TRACY W. DAILEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 4:11-CV-1565 CAS |
| | ) |
| SOUTHSIDE MACHINE WORK, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER OF REMAND

This removed matter is before the Court on defendant Southside Machine Work, Inc.'s[1] ("Southside") Memorandum of Law in Support of Removal and plaintiff Tracy W. Dailey's Memorandum in Support of Remand, both filed in response to the Order Concerning Removal. "In every federal case the court must be satisfied that it has jurisdiction before it turns to the merits of other legal arguments." Carlson v. Arrowhead Concrete Works, Inc., 445 F.3d 1046, 1050 (8th Cir. 2006). The Eighth Circuit has admonished district courts to "be attentive to a satisfaction of jurisdictional requirements in all cases." Sanders v. Clemco Indus., 823 F.2d 214, 216 (8th Cir. 1987). The Court concludes that it lacks subject matter jurisdiction over this case and therefore must remand it to the court from which it was removed.

**Background**

Plaintiff filed suit in the Circuit Court of the City of St. Louis, State of Missouri. The petition asserts that plaintiff Dailey has been legally deaf since birth, and therefore suffers a disability under Missouri Revised Statutes § 213.010(4) (2000). Dailey worked as a machinist for

---

[1] The defendant refers to itself as "South Side Machine Works, Inc." For purposes of this opinion, the Court will use the defendant's name as it appears on the petition.

defendant Southside, and alleges that Southside laid him off and ultimately terminated his employment because of his deafness. The petition asserts state law claims for discrimination based on actual disability in violation of the Missouri Human Rights Act ("MHRA") (Count I), discrimination based on perceived disability in violation of the MHRA (Count II), and wrongful discharge in retaliation for filing a workers' compensation claim (Count III).

Southside removed the action to this Court pursuant to 28 U.S.C. §§ 1331 and 1441, asserting that plaintiff's state law claims are preempted under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. In its Notice of Removal, Southside asserts that the petition alleges plaintiff was a member of the International Association of Machinists, District 9, and therefore the terms and conditions of his employment were subject to a collective bargaining agreement. Southside also states that the petition alleges its actions constitute a breach of the collective bargaining agreement. Southside therefore argues that resolution of plaintiff's allegations will require construction and interpretation of the applicable collective bargaining agreement, citing Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211 (1985) ("Questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law.").

**Discussion**

I.

Southside, as the party invoking jurisdiction, bears the burden of proving that all prerequisites to jurisdiction are satisfied. Green v. Ameritrade, Inc., 279 F.3d 590, 596 (8th Cir. 2002). Removal statutes are strictly construed, In re Business Men's Assurance Co. of America, 992 F.2d 181, 183 (8th Cir. 1993), and any doubts about the propriety of removal are to be resolved in favor of remand. Central Iowa Power Coop. v. Midwest Indep. Transmission Sys. Operator, Inc.,

561 F.3d 904, 912 (8th Cir. 2009).  While a defendant has a statutory right to remove in certain situations, the plaintiff is still the master of his own claim.  See Caterpillar Inc. v. Williams, 482 U.S. 386, 391 & n.7 (1987); see also Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994) ("Defendant's right to remove and plaintiff's right to choose his forum are not on equal footing"; consequently, "uncertainties are resolved in favor of remand.")

In most instances, the presence or absence of a federal question is governed by the well-pleaded complaint rule "which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar, 482 U.S. at 392.  "Congress has long since decided that federal defenses do not provide a basis for removal." Id. at 399.  "Thus, a case may not be removed to federal court on the basis of a federal defense, . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case."  Rivet v. Regions Bank of Louisiana, 522 U.S. 470, 475 (1998) (internal quotation marks and quoted case omitted).

It is well established that Section 301 of the LMRA completely preempts state law claims, including tort claims, that involve the interpretation and application of a collective bargaining agreement.  United Steelworkers of America v. Rawson, 495 U.S. 362, 368-69 (1990).  As a result, an action that in substance charges a violation of a collective bargaining agreement may be removed to federal court, even though the petition itself does not include a federal cause of action. Allis-Chalmers, 471 U.S. at 214.  The Supreme Court has explained that in order to give the "policies that animate § 301" their proper range, "the pre-emptive effect of § 301 must extend beyond suits alleging contract violations.  These policies require that the relationships created by a collective-bargaining agreement be defined by application of an evolving federal common law

3

grounded in national labor policy." Allis-Chalmers, 471 U.S. at 210-11 (internal quotation marks, brackets and quoted case omitted).

It is certain, however, that not every state tort suit brought by an employee covered by a collective bargaining agreement is preempted by the LMRA. In Lingle v. Norge Division of Magic Chef, Inc., the Court explained that a state-law claim is preempted by Section 301 only if resolution of the claim requires interpretation of a collective bargaining agreement. 486 U.S. 399, 413 (1988). In Lingle, the Court held that the plaintiff's state-law claim for retaliatory discharge for filing a workers' compensation claim was not preempted by Section 301. Id. Federal preemption is driven by the need to ensure

> that the meaning given a contract phrase or term be subject to uniform federal interpretation. Thus, questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort.

Allis-Chalmers, 471 U.S. at 211.

State law tort claims that do not implicate these federal interests are not preempted, and the determination must be made on a case-by-case basis. Kmetz v. Permacel St. Louis, Inc., 2008 WL 4643868, at *2 (E.D. Mo. Oct. 20, 2008). "[N]ot every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law." Allis-Chalmers, 471 U.S. at 211. The inquiry is whether the state tort claim "confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." Id. at 213. "[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made

4

between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." Allis-Chalmers, 471 U.S. at 220 (internal citation omitted).

In Lingle, the Supreme Court approved in dicta the Seventh Circuit's recognition "that § 301 does not pre-empt state anti-discrimination laws, even though a suit under these laws, like a suit alleging retaliatory discharge, requires a state court to determine whether just cause existed to justify the discharge." Lingle, 486 U.S. at 412 (quoted case omitted).  The Supreme Court explained that in most cases, the existence of a violation of state-law antidiscrimination law will not be dependent on the terms of a collective bargaining agreement:

> The operation of the antidiscrimination laws . . . illustrate[s] the relevant point for § 301 pre-emption analysis that the mere fact that a broad contractual protection against discriminatory-or retaliatory discharge may provide a remedy for conduct that coincidentally violates state-law does not make the existence or the contours of the state law violation dependent upon the terms of the private contract.  For even if an arbitrator should conclude that the contract does not prohibit a particular discriminatory or retaliatory discharge, that conclusion might or might not be consistent with a proper interpretation of state law.  In the typical case a state tribunal could resolve either a discriminatory or retaliatory discharge claim without interpreting the "just cause" language of a collective-bargaining agreement.

Lingle, 486 U.S. at 412-13.

## II.

Based on the foregoing principles, the Court must determine whether plaintiff's MHRA disability discrimination claim is based on nonnegotiable state-law rights independent of any right established by the collective bargaining agreement ("CBA"), or whether "evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." Allis-Chalmers, 471 U.S. at 213.  The petition alleges that plaintiff Dailey has been legally deaf since birth and has a disability within the meaning of the MHRA.  Plaintiff is a Union machinist. Plaintiff alleges that

5

supervisors and coworkers at Southside were hostile to him because of his hearing disability and that, by reading lips, he caught his supervisor stating that he should not be working at Southside, and other co-workers and supervisors "speaking ill of him because he was disabled." Petition, ¶ 20. Plaintiff alleges that in 2008, Southside hired a less-experienced machinist to operate the machine plaintiff had been successfully operating, and reassigned plaintiff to a smaller machine for simpler jobs.

The petition alleges that on July 20, 2009, plaintiff's supervisor called plaintiff into his office and told plaintiff he was being laid off. Plaintiff requested Union representation at the meeting but the supervisor refused, and the supervisor also refused to write down what he was saying, so plaintiff was required to read his lips. The petition alleges that under the Union contract, less senior employees were to be laid off first, but plaintiff contends at least three employees who had less seniority than him were allowed to keep their jobs while he was laid off. Petition, ¶¶ 35-36. In April 2010, plaintiff received a letter from Southside regarding his retirement, which stated he had been terminated on July 29, 2009. Plaintiff alleges this was the first notice he received that his employment had been terminated.

The MHRA prohibits an employer from, among other things, discharging or otherwise discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of the individual's disability. Mo. Rev. Stat. § 213.055.1. The MHRA defines disability as a "physical or mental impairment which substantially limits one or more of a person's major life activities, being regarded as having such an impairment, a condition perceived as such, or a record of having such an impairment, which with or without reasonable accommodation does not interfere with performing the job." Mo. Rev. Stat. § 213.010(4).

6

To establish a prima face case of disability discrimination under the MHRA, Dailey must show that (1) he has a disability as defined by the MHRA; (2) Southside took an adverse employment action against him; and (3) there is evidence from which it may be inferred that his disability was a contributing factor in the adverse employment action. Ponder v. Verizon North, Inc., 2010 WL 4868080, at *10 (E.D. Mo. Nov. 23, 2010) (citing Gamber v. Missouri Dep't of Health and Senior Servs., 225 S.W.3d 470, 475 (Mo. Ct. App. 2007)); see generally Daugherty v. City of Maryland Heights, 231 S.W.3d 814, 819-20 (Mo. 2007) (en banc) (establishing the "contributing factor" standard under the MHRA).

It is clear the first two elements of the prima facie case–that Dailey was disabled within the meaning of the MHRA and that he suffered an adverse employment action–require no consideration of the CBA's provisions.  The third element–that Dailey's disability was a contributing factor in Southside's actions–is a purely factual question relating to Southside's conduct and motivation. Cf. Smolarek v. Chrysler Corp., 879 F.2d 1326, 1334 (6th Cir. 1989) (quoting Lingle, 486 U.S. at 407). Thus, it appears plaintiff's MHRA discrimination claim is based on state law rights independent of the applicable CBA, and that consideration of the CBA's terms is not necessary.

If Dailey establishes the prima facie elements of his MHRA discrimination claim, Southside will need to show that it had a non-discriminatory reason for its actions.  Southside may assert as a defense to Dailey's claim that it based its actions on the CBA's seniority or other provisions.  Such a defense, however, does not require a finding of preemption. See Smolarek, 879 F.2d at 1334.  To resolve the MHRA claim in light of a defense based on the CBA, the factfinder is only required to decide whether Dailey's deafness was a factor in Southside's adverse action against him or, instead, whether Southside acted as it did solely because it believed it was required to do so by the CBA, or for some other legitimate, non-discriminatory reason.  See id.

7

Southside argues that Dailey's claim is "inextricably intertwined" with consideration of the terms of the CBA because plaintiff expressly relies on the agreement's terms to prove his claims of discrimination.  Southside notes that petition invokes provisions of the CBA that "less senior employees were to be laid off first," and asserts that "at least 3 employees who had less seniority than Dailey were allowed to keep their jobs."  Petition at 4, ¶¶ 35-36.  To be clear, Southside does not argue that Dailey's MHRA claims are necessarily intertwined with the CBA because specific language in either the MHRA itself or in the CBA requires consideration of the CBA's terms for Dailey to establish a prima facie case.  Rather, Southside's argument is that Dailey's MHRA claims are necessarily intertwined with the CBA because he mentioned aspects of the CBA in the petition.

Although the petition makes brief references to certain provisions of the CBA, Dailey does not assert a claim for its breach.  To support Dailey's contention that his disability was a contributing factor in Southside's actions, the petition lists multiple actions by supervisors and coworkers that indicate bias against him because of his deafness.[2]  Dailey states in his memorandum of law in support of remand that references to the CBA in the petition "were merely meant to tell a complete story and provide insight into [his] state of mind," but also notes that his state of mind

---

[2]The petition alleges that: (1) plaintiff began experiencing hostility from his co-workers and supervisors due to his hearing disability; (2) by lip reading, plaintiff caught his supervisor, Jim Jost, Jr., discussing with the supervisor's son, Jim Jost, III, that plaintiff should not be working at Southside; (3) plaintiff received at least one note from co-worker John Dierkies directly stating that deaf people should not be working in a machine shop; (4) Dennis Morris told Dailey that he should find work elsewhere; (5) Mike Morris tried to get Dailey to apply for a job at another machine shop; (6) many other co-workers and supervisors covered their mouths while they spoke so that plaintiff could not read their lips, but nonetheless plaintiff caught many of them speaking ill of him because he was disabled; (7) several co-workers made a bet as to whether plaintiff would ultimately quit Southside because of the treatment he received there; and (8) supervisor Jim Jost, Sr. stated that plaintiff was just a simple man and was only capable of doing simple jobs.  See Petition ¶¶ 16-22, 26.

"is not an element of his state law case" and the references "were just extraneous facts that were not needed for [him] to satisfy his burden of proof." Pl.'s Mem. Supp. Remand at 7, n.4.

Based on a thorough examination of the petition as whole, the Court agrees that plaintiff's limited references to the CBA's terms do not make the existence or the contours of his MHRA claims violation dependent upon the CBA's terms. Cf. Lingle, 486 U.S. at 413. Although the petition mentions the CBA, plaintiff does not base his MHRA disability discrimination claim on the CBA's terms. It is clear that plaintiff can establish the prima facie elements of his MHRA disability discrimination claim without any reference to the CBA. The MHRA claim is not substantially dependent upon analysis of the CBA's terms, and is therefore not inextricably intertwined with consideration of its terms. The Court concludes that plaintiff's MHRA disability discrimination claim is based on state-law rights entirely independent of the CBA and is not preempted by § 301. As a result, subject matter jurisdiction is lacking and the case must be remanded.

The cases cited by Southside in support of removal are readily distinguishable. In Davis v. Johnson Controls, Inc., 21 F.3d 866 (8th Cir. 1994), the Eighth Circuit held that an MHRA handicap discrimination claim based on the defendant's refusal to allow the plaintiff to return to work after a back injury was preempted by Section 301, because it was necessary to interpret the collective bargaining agreement in order for plaintiff to establish his prima facie case. To show that he was handicapped within the meaning of the MHRA,[3] the plaintiff in Davis had to establish that the employer could have reasonably accommodated his request to return to work. Id. at 868. The Eighth Circuit concluded the issue whether plaintiff could be relocated to a position commensurate

---

[3] As stated above, the first element of a prima facie case of MHRA disability discrimination is to establish that the plaintiff is disabled within the meaning of the statute. Ponder v. Verizon North, Inc., 2010 WL 4868080, at *10 (E.D. Mo. Nov. 23, 2010).

with his physical limitations would require an examination of the plaintiff's and other employees' seniority rights under the agreement. Id. Plaintiff's argument that the agreement allowed for his transfer without alteration of seniority rights also required interpretation of the agreement. Id. Davis is distinguishable from the present case because, as discussed above, under the facts of this case it is not necessary to interpret or apply the CBA for Dailey to establish a prima facie case.[4]

Defendant also relies on Martin v. Conopco, Inc., 2010 WL 2541234 (W.D. Mo. June 17, 2010). Plaintiff Martin was a union steward. Her petition alleged that the union's chief and assistant chief stewards harassed her and conspired to have her removed from the labor management board because of her race and sex, in violation of the MHRA. The union and the chief steward removed the case to federal court on the basis of § 301 preemption. The district court denied plaintiff's motion to remand, concluding that removal was proper because the petition's allegations depended upon analysis of the collective bargaining agreement and interpretation of the union's constitution and by-laws. Id. at *2. Specifically, the court found that plaintiff "implicitly" pleaded the union did not take appropriate steps to discipline the other stewards and stop the harassment, which would require the court to refer to and interpret the collective bargaining agreement to determine what action, if any, the union could take against its own members on plaintiff's behalf. Id. at *2. The court also concluded that plaintiff's claims against the union were preempted by Section 9(a) of the National Labor Relations Act, because it interpreted the petition to allege the union did not fairly represent plaintiff to the employer about the harassment she received. Id.

Martin is not persuasive authority that removal is proper here, because the facts of that case show the plaintiff's claims were based on rights clearly dependent on and intertwined with the terms

---

[4]The Court notes that Davis v. Johnson Controls, Inc., 21 F.3d 866 (8th Cir. 1994), was not a removal case but rather was filed directly in federal court.

of a collective bargaining agreement and union by-laws. Plaintiff Dailey's MHRA disability discrimination prima facie case is, in contrast, not dependent on the interpretation or application of the CBA's terms for the reasons discussed above.[5]

III.

To prove a prima facie case of MHRA perceived disability discrimination, Dailey must establish that Southside either: (1) wrongly believed Dailey had an impairment that substantially limited one or more major life activities, or (2) wrongly believed that an actual, non-limiting impairment substantially limited one or more of Dailey's major life activities. See Daugherty, 231 S.W.3d at 821. The Court concludes that establishment of a prima facie case on the perceived disability claim, under either avenue of proof, will involve purely factual questions about Southside's conduct and motives and does not require interpretation and application of the CBA. Plaintiff's MHRA perceived disability claim is therefore not inextricably intertwined with consideration of the terms of the CBA, is not preempted by § 301, and provides no basis for removal.

---

[5]The final case cited by Southside, Fant v. New England Power Service Co., 239 F.3d 8 (1st Cir. 2001), is factually distinguishable as well as not binding on this Court. In Fant, as in Davis, the plaintiff was injured and subsequently sought reassignment to a different type of job. Plaintiff sued his employer and union, asserting that the employer failed to recall him after a layoff despite his seniority, and the union breached its representation duties in failing to pursue a grievance on his behalf. Id. at 14. The First Circuit concluded that plaintiff's state law suit was tantamount to a hybrid cause of action governed by § 301 of the LMRA, resolution of which necessarily required interpretation of the terms set forth in the applicable CBA. Id. (citing DelCostello v. International Bhd. of Teamsters, 462 U.S. 151, 164 (1983)). The court found that the rights Fant relied upon were created by the CBA and depended upon the meaning of its terms, because the conduct at issue constituted a breach of duty under the CBA, and resolution of the disputed hinged upon interpretation of the CBA. Id. at 15. In the instant case, Dailey does not seek accommodation, as did the plaintiffs in Davis and Fant and, unlike those plaintiffs, Dailey can prove his prima facie case without application or interpretation of the CBA. In addition, Dailey did not sue his union alleging a breach of its duties to him, as did the plaintiffs in Fant and Martin. Southside did not cite any factually similar precedent in support of removal.

IV.

To prove a prima facie case of wrongful discharge in retaliation for filing a workers' compensation claim, plaintiff must establish that (1) he was Southside's employee before the injury; (2) he exercised his rights under the Missouri workers compensation act; (3) Southside discharged or discriminated against him; and (4) there is an exclusive causal relationship between plaintiff's actions and Southside's actions. Hansome v. Northwestern Cooperage Co., 679 S.W.2d 273, 275 (Mo. 1984) (en banc). Proof of the first three elements of the prima facie case will not require consideration of the CBA's terms. The Court also finds that the question of a causal relationship between Dailey's workers' compensation claim and Southside's actions will turn on purely factual questions about Southside's conduct and motives rather than on the scope of its contractual authority to take the actions it did. See Lingle, 486 U.S. at 413 (state-law claim for retaliatory discharge for filing a workers' compensation claim was not preempted by Section 301); Meyer v. Schnucks Markets, Inc., 163 F.3d 1048, 1050-52 (8th Cir. 1998) (same). As a result, this claim is not preempted by § 301 and provides no basis for removal.

**Conclusion**

For the foregoing reasons, the Court concludes that defendant Southside has failed to meet its burden to prove that all prerequisites to jurisdiction are satisfied, as Southside has not established that plaintiff's claims are preempted by § 301 of the LMRA. As a result, the Court lacks subject matter jurisdiction over this case and it must be remanded to the state court from which it was removed. See 28 U.S.C. § 1447(c). Plaintiff's request for attorneys' fees will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that this case is **REMANDED** to the Circuit Court of the City of St. Louis, State of Missouri, for lack of subject matter jurisdiction.

**IT IS FURTHER ORDERED** that plaintiff's request for attorney's fees is denied.

　　　　　　　　　　　　　　　　　　　　　　　　　　　／s／ Charles A. Shaw
　　　　　　　　　　　　　　　　　　　　　　　　　　**CHARLES A. SHAW**
　　　　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**

Dated this  13th  day of December, 2011.